UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY ROSS,

                Petitioner,

         -against-

TINA M. STANFORD,

                Respondent.

**OPINION AND ORDER**

16-CV-09202 (PMH)

PHILIP M. HALPERN, United States District Judge:

Anthony Ross ("Petitioner"), in a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1, "Petition"), challenges the judgment of the New York State County Court, Westchester County, as modified by the Supreme Court of New York, Appellate Division, Second Department, convicting him of a "course of sexual conduct against a child" in the second degree and endangering the welfare of a child. (Petition ¶¶ 5, 9). Petitioner contends that he was not provided effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. (*Id.* ¶ 12).

The Honorable Andrew E. Krause, on December 22, 2025, issued a Report and Recommendation recommending that the Petition be denied. (Doc. 37, "Report" or "R&R"). Petitioner filed objections to the Report on January 30, 2026. (Doc. 40, "Objections"). Respondent failed to file any response to Petitioner's Objections, despite the Court's *sua sponte* extension to do so. (*See* Doc. 41).

For the reasons stated below, Petitioner's Objections to the Report are overruled and the Court adopts the Report in full, as modified.

1

## BACKGROUND

Petitioner, in 2005, was accused of sexually abusing his then-five-year-old daughter, K.K. (Doc. 12, "Resp. Aff." at 2).[1] K.K., at the time, primarily lived with her mother and Petitioner's ex-wife, B.K., but would visit Petitioner every other weekend. (*Id.* at 2-3). Dr. Jennifer Canter, the director of the Children's Advocacy Center at Westchester Medical Center in Valhalla, examined K.K. and found a loss of hymenal tissue that was consistent with abuse. (*Id.* at 5-6). The Putnam County Department of Social Services filed a petition in Putnam County Family Court, alleging that Petitioner sexually abused K.K. and the petition was sustained. (*Id.* at 6-7). Petitioner was represented by Matthew Mazzamurro in the family court proceeding. (*Id.* at 7).

Petitioner was subsequently charged by indictment with: (1) course of sexual conduct against a child in the first degree pursuant to N.Y. Penal Law § 130.75(1)(a); (2) incest pursuant to N.Y. Penal Law § 255.25; (3) assault in the third degree pursuant to Penal Law § 120.00(1); and (4) endangering the welfare of a child pursuant to N.Y. Penal Law § 260.10(1). (Resp. Ex. 1, Doc. 13-1).[2] Mr. Mazzamurro continued to represent Petitioner during his criminal proceeding. (Resp. Aff. at 14).

Mr. Mazzamurro, just over two months before Petitioner's trial, was relieved and subsequently reinstated as Petitioner's counsel. (*Id.* at 15-16). Mr. Mazzamurro, on Petitioner's behalf, moved for public funds to hire an investigator and medical expert pursuant to N.Y. County Law § 722-c. (*Id.* at 14).[3] Petitioner's application was granted. (Resp. Ex. 2, Doc. 13-2). Mr.

---

[1] Citations to specific pages of filings on the docket correspond to the pagination generated by ECF.

[2] Citations to "Resp. Ex. _" refer to the exhibits annexed to Respondent's Memorandum of Law in opposition to the Petition. (Docs. 13-1 through 13-41).

[3] At the time of Petitioner's motion, N.Y. County Law § 722-c permitted a court to approve $1,000 in compensation for "investigative, expert or other services" for a defendant and could approve additional funds "[o]nly in extraordinary circumstances . . . ." N.Y. County Law § 722-c (2003) (amended 2023).

Mazzamurro then, on September 7, 2006, requested to be relieved as Petitioner's counsel because Petitioner lacked the funds to pay for an attorney and experts. (Resp. Aff. at 15). The trial court granted Mr. Mazzamurro's request and appointed Barry Warhit to represent Petitioner. (*Id.*). Petitioner, in a September 14, 2006 hearing, indicated that he did not consent to the substitution of his counsel, and that he could pay for an attorney. (Doc. 24, Sept. 14, 2006 Hr. Tr. at 2:12-3:3, 8:24-9:6). Mr. Mazzamurro, in a letter to the trial court prior to this hearing, also represented to the trial court that Petitioner informed him "that he would pay me the agreed upon fee and provide me with funds to hire people necessary to defend this case." (Resp. Ex. 12, Doc. 13-23). Consequently, the trial court relieved Mr. Warhit from representing Petitioner, and reinstated Mr. Mazzamurro as Petitioner's counsel. (*Id.* at 6:10-11). The trial court, at the September 14, 2006 hearing, admonished Petitioner that "[i]f you have a problem with Mr. Mazzamurro, you can retain whatever attorney you want. I am not going to assign another attorney to represent you if some additional problem arises . . . ." (*Id.* at 6:2-7). The court did not discuss whether it would approve further public funds for Petitioner to retain experts under N.Y. County Law § 722-c. (*See id.*). However, Mr. Mazzamurro came away from this hearing with the understanding that the Court would not approve additional funds for experts. (Doc. 34, June 7 and 10, 2011 Hr'g Tr., "440.10 Hr'g Tr." at 120:14-121:2). Petitioner was unable to secure sufficient funds to pay for an expert, (*id.* at 116:22-117:9), and Mr. Mazzamurro did not move for additional funds to retain an expert or retain an expert for Petitioner's trial (Resp. Aff. at 27).

Petitioner was convicted by a jury on all counts on December 5, 2006. (*Id.* at 16). At the trial, K.K. testified that Petitioner sexually abused her. (*Id.* at 8). K.K. initially testified that Petitioner had touched her private parts with his private parts, but upon cross-examination by Mr. Mazzamurro, K.K. stated that Petitioner touched her private parts with his hands, not his private

parts. (*Id.*). The prosecution called two experts: (1) Dr. Canter, who testified that her examination of K.K.'s hymenal tissue was consistent with penetrating trauma; and (2) Dr. Anne Meltzer, a child psychologist, who testified regarding Child Sexual Abuse Accommodation Syndrome (CSAAS) and that children who are sexually abused often behave in predictable ways. (*Id.* at 10-12). Mr. Mazzamurro, on cross-examination, elicited from Dr. Canter that she had previously been provided inaccurate information by an abuse victim and that she could not conclude what type of object had penetrated K.K. (*Id.* at 9-10). Mr. Mazzamurro also elicited from Dr. Meltzer that children will often provide inaccurate answers to coercive questioning, that she had been involved in many cases where children made false accusations, and that, in most of the cases in which children made false accusations, the parents of the child were in a custody or visitation dispute. (*Id.* at 12). The defense put on four witnesses, none of them experts. (*Id.* at 12-14).

Petitioner, following his conviction, obtained new counsel and filed numerous post-trial motions. (*See id.*). On April 2, 2007, Petitioner filed a motion to set aside the verdict pursuant to N.Y. C.P.L. § 330.30(1), which was denied on May 30, 2007. (*See* Resp. Exs. 3-6, Docs. 13-3 through 13-10). Petitioner, on June 15, 2010, filed a motion to vacate the judgment of conviction pursuant to C.P.L. § 440.10. (*See* Resp. Exs. 7-9, Docs. 13-11 through 13-20). The majority of Petitioner's Section 440.10 motion was denied on April 12, 2011. (Resp. Ex. 10, Doc. 13-21). Relevant here, the judge ordered a hearing regarding Mr. Mazzamurro's "conduct with respect to medical experts" before and during Petitioner's trial. (*Id.* at 13). The hearing was held on June 7 and June 10, 2011, and Mr. Mazzamurro was the only witness. (*See* 440.10 Hr'g Tr.). The judge, on November 30, 2011, denied the remainder of Petitioner's Section 440.10 motion. (Resp. Ex. 13, Doc. 13-24). Petitioner, on March 15, 2012, filed a direct appeal of his judgment of conviction. (Resp. Ex. 14, Docs. 13-25 through Doc. 13-28). The Appellate Division also granted Petitioner

leave to appeal the orders denying his Section 440.10 motion. (Resp. Aff. at 32). The Appellate Division, on July 30, 2014, issued two orders: (1) affirming the denials of Petitioner's Section 440.10 motion; and (2) modifying Petitioner's judgment of conviction in his direct appeal. (Resp. Exs. 20-21, Docs. 13-39 and 13-40). The New York Court of Appeals, on November 30, 2015, denied Petitioner's applications for leave to appeal the orders of the Appellate Division. (Resp. Ex. 22, Doc. 13-41).

Petitioner filed the Petition on November 29, 2016. (*See* Petition). Respondent filed an opposition on June 1, 2017 (Docs. 12-13), and Petitioner filed a reply on July 1, 2017 (Doc. 15). Judge Krause, on December 22, 2025, issued the R&R recommending that the Petition be denied.[4] Petitioner filed objections to the R&R on January 30, 2026. (Doc. 40, "Objections"). Respondents, despite being afforded the opportunity to do so (*see* Report at 42), never filed a response to Petitioner's Objections.

## **STANDARD OF REVIEW**

"A district court reviewing a magistrate judge's report and recommendation 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Antoine v. Warden*, No. 20-CV-05130, 2021 WL 4066654, at *1 (S.D.N.Y. Sept. 7, 2021) (quoting 28 U.S.C. § 636(b)(1)). "The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record." *Olivo v. Graham*, No. 15-CV-09938, 2021 WL 3271833, at *1 (S.D.N.Y. July 30, 2021) (citing *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)). "[A]ny part of the magistrate judge's recommendation that has been properly objected to must be

---

[4] By Order dated January 9, 2017, the Honorable Nelson S. Román—to whom this case was assigned prior to its reassignment to this Court on April 3, 2020—referred this case to the assigned Magistrate Judge. (Doc. 5). On October 15, 2020, the referral was reassigned to Judge Krause.

reviewed by the district judge *de novo.*" *Nambiar v. The Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 358 (2d Cir. 2025) (quoting *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010)). An objection is "proper" if it is timely and specific. *Id.* at 359. "A proper objection generally may not raise new arguments not previously made before the magistrate judge." *Id.*

## DISCUSSION

Petitioner contends that Judge Krause erred by: (1) finding trial counsel was not ineffective by failing to put on expert testimony or consult expert witnesses (Objections at 2); (2) finding that *Hinton v. Alabama*, 571 U.S. 263 (2014) is distinguishable from Petitioner's case (Objections at 6-7); (3) finding that trial counsel's cross-examination of the prosecution experts was not ineffective (*id.* at 13-14); (4) finding that trial counsel's failure to call the victim's pediatrician as a witness, cross-examine Petitioner's ex-wife, and "present evidence of the family court history" was not ineffective (*id.* at 17); and (5) not including a recommendation as to whether a certificate of appealability should issue (*id.* at 18).

In deciding a petition for writ of habeas corpus seeking relief from a decision of a state court, "a federal court cannot disturb a state court's decision on a case or issue that rests on an independent and adequate state ground." *Murray v. Noeth*, No. 21-CV-05343, 2024 WL 4350913, at *10 (S.D.N.Y. Sept. 30, 2024). "When a state court has decided a case on an independent and adequate state ground—whether substantive or procedural—[federal courts] decline to review the state court's decision." *Garraway v. Phillips*, 591 F.3d 72, 75 (2d Cir. 2010). Claims that are decided based on independent and adequate state grounds are subject to a procedural bar. *Id.*

If, however, a habeas petitioner's claim is adjudicated on the merits, federal courts apply "the deferential standard of review established by the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA')" to the petitioner's claims. *Hawkins v. Costello*, 460 F.3d 238, 242 (2d

Cir. 2006). "Applying AEDPA deference, a federal court may grant a writ of habeas corpus if the state court's adjudication on the merits 'was contrary to, or involved an unreasonable application of, clearly established, Federal law as determined by the Supreme Court of the United States." *Id.* (quoting 28 U.S.C. § 2254(d)(1)). A decision of a state court is "contrary to" clearly established federal law "if it 'arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law' or if it "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Id.* (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000)). For a decision of a state court to be "unreasonable," it must not just be incorrect, but must have "[s]ome increment of incorrectness beyond error." *Id.* at 243 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

A court may also grant a writ of habeas corpus if the adjudication on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "The state court's factual findings are presumed correct unless rebutted by clear and convincing evidence." *Martinez v. Capra*, 675 F. App'x 46, 47 (2d Cir. 2017) (summary order) (citing 28 U.S.C. § 2254(e)(1)).

I.    Timeliness and Mootness

Judge Krause found that: (1) Petitioner timely filed the Petition; and (2) the Petition is not moot because Petitioner is no longer in custody. (Report at 25-27). Because no party timely objected to these findings, the Court reviews these findings for clear error. *Olivo*, 2021 WL 3271833, at *1 (citing *Wilds*, 262 F. Supp. 2d at 169).

Judge Krause correctly found that Petitioner's conviction became final on February 29, 2016, ninety days after the New York Court of Appeals denied Petitioner leave to appeal the decisions of the Appellate Division. (Report at 25); *see also McKinney v. Artuz*, 326 F.3d 87, 96

(2d Cir. 2003) ("Because [petitioner] did not file a petition for certiorari seeking review of the New York state-court decisions in the United States Supreme Court, his conviction became final ninety days after . . . the date of the order denying his application for leave to appeal to the New York Court of Appeals."). Petitioner then had one year, until March 1, 2017, to file a habeas petition challenging his conviction. *See Artuz*, 150 F.3d at 98. Petitioner filed the Petition on November 29, 2016. (*See* Petition). Thus, there is no clear error in Judge Krause's finding that the Petition was timely filed.

There is also no clear error in Judge Krause's finding that the Petition is not moot because, even though Petitioner is no longer in custody, Petitioner was in custody at the time he filed the Petition. (*See* Report at 26-27). Petitioner was still serving a five-year term of post-release supervision when he filed the Petition. *See Harvey v. City of New York*, 435 F. Supp. 2d 175, 177 (E.D.N.Y. 2006) ("[A] petitioner who is on parole or serving a term of supervised release is 'in custody' for the purposes of the federal habeas corpus statutes." (citing *Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994)). Petitioner is also presumed to face collateral consequences from his conviction even after he is no longer in custody. *See Spencer v. Kemna*, 523 U.S. 1, 8 (1998) ("[W]e have been willing to presume that a wrongful criminal conviction has continuing collateral consequences . . . ."). Thus, the Petition is not moot because Petitioner is no longer in custody.

II.      Ineffective Assistance of Counsel

Petitioner's sole argument in the Petition is that his trial counsel, Mr. Mazzamurro, provided him with ineffective assistance of counsel. (*See* Petition ¶ 12). Because Petitioner objects to the R&R's recommendation regarding Petitioner's claims of ineffective assistance, the Court conducts a *de novo* review. *See Nambiar*, 158 F.4th at 358. For the reasons set forth below, the Court agrees with Judge Krause and the New York state courts that Mr. Mazzamurro was not

ineffective in representing Petitioner and, accordingly, adopts the R&R in full as it relates to Petitioner's claim of ineffective assistance of counsel.

Ineffective assistance of counsel claims are evaluated under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* standard requires Petitioner to first "show that counsel's performance was deficient," in that it fell below an "objective standard of reasonableness." *Id.* at 687-90. "Second, [Petitioner] must show that the deficient performance prejudiced the defense"; in other words, Petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694. There is a "strong presumption" that counsel's conduct "falls within the wide range of reasonable professional assistance," *id.* at 689, "and it is Petitioner's burden to demonstrate 'that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *United States v. Yeagley*, No. 08-CR-00707, 2017 WL 76903, at *7 (S.D.N.Y. Jan. 3, 2017) (quoting *Kimmelman v. Morrison*, 411 U.S. 365, 381 (1986)). The Second Circuit and Supreme Court have indicated that "*double deference* is appropriate when evaluating *Strickland* claims governed by § 2254(d)." *Gen. Waiters v. Lee*, 857 F.3d 466, 477 n.20 (2d Cir. 2017) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

A.  Trial Counsel's Decision to Not Retain Medical Experts

Petitioner objects to Judge Krause's finding that the Appellate Division's ruling that Mr. Mazzamurro's failure to consult or hire experts "was neither contrary to nor an unreasonable application of *Strickland*" and was not "based on an unreasonable determination of the facts in light of the evidence presented in state court." (Objections at 2 (quoting Report at 32)). Petitioner argues that trial counsel "did not have a legitimate, valid or reasonable 'strategy' justification for

his failure to obtain and use the services of defense experts, and that he could have, but unreasonably and ineffectively and unjustifiably failed to apply for court-approved funds for such experts." (*Id.* at 3). The Court agrees with Judge Krause that Petitioner failed to meet his burden of establishing that Mr. Mazzamurro's performance was deficient under the first prong of the *Strickland* analysis. (Report at 37 n.14).

The Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance of success." *Knowles*, 556 U.S. at 123 (2009). As Judge Krause correctly noted, there is "no *per se* rule dictat[ing] that expert consultation is always necessary in order to provide effective assistance of counsel in child sexual abuse cases." *Englert v. Lowerre*, 115 F.4th 69, 74 (2d Cir. 2024) (quoting *Gersten v. Senkowski*, 426 F.3d 588, 609 (2d Cir. 2005)). Indeed, "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Harrington v. Richter*, 562 U.S. 86, 111 (2011). In *Harrington*, the Ninth Circuit found, in an en banc decision, that the petitioner's trial counsel was constitutionally ineffective for "failing to consult experts on blood evidence . . . ." *Id.* at 97. The Supreme Court reversed. *Id.* at 91. The Supreme Court found that defense counsel represented the petitioner "with vigor and conducted a skillful cross-examination . . . elicit[ing] concessions from the State's experts and was able to draw attention to weaknesses in their conclusions . . . ." *Id.* at 111. Although consultation with "hypothetical experts . . . might possibly have been useful. . . . Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Id.* at 107.

Here, the Appellate Division found that Mr. Mazzamurro "pursued a strategy that focused on denial of the accusations and impeachment of witnesses" rather than the use of experts. *People v. Ross*, 119 A.D.3d 964, 965 (N.Y. App. Div. 2014). The Appellate Division noted Mr.

Mazzamurro's success—Mr. Mazzamurro, on cross-examination, elicited a recantation of "critical aspects" of K.K.'s testimony and testimony unfavorable to the prosecution from the prosecution's experts. *Id.* Mr. Mazzamurro elicited a recantation of K.K.'s testimony "regarding genital contact between herself and the defendant, a necessary element of the charges of course of sexual conduct against a child in the first degree and incest." *Id.* Mr. Mazzamurro also elicited from Dr. Canter that "she could not determine whether" the loss of hymenal tissue in K.K. "was caused by penile penetration or was the result of one or more acts of penetration, which was a necessary element of the charge of course of sexual conduct against a child in the first degree." *Id.* Petitioner has not established that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Mr. Mazzamurro, like the petitioner's counsel in *Harrington*, represented Petitioner "with vigor" and skillfully cross-examined the prosecution's experts. *Harrington*, 562 U.S. at 111. The Appellate Division's finding that, taken as a whole, Mr. Mazzamurro's performance was not deficient is not contrary to nor an unreasonable application of clearly established federal law. *Accord id.* ("[I]t is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy.").

Petitioner also argues that Mr. Mazzamurro's decision not to retain experts "had nothing to do with a strategy decision." (Objections at 5). However, at Petitioner's Article 440 hearing, Mr. Mazzamurro testified that his "strategy was . . . . to make sure I'd be able to effectively interview the one person who was there who knows what went on, so my focus was on the cross-examination of the child." (June 7, 2011 Hr'g Tr. at 31:11-21). Thus, the Appellate Division's conclusion was not "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Accordingly, the Appellate Division and Judge Krause were correct in finding that Mr. Mazzamurro's performance was not deficient and Petitioner fails to satisfy the first prong of the *Strickland* analysis with respect to Mr. Mazzamurro's decision not to retain expert witnesses.

B.   Application of *Hinton v. Alabama*

Petitioner objects to the R&R's finding that Petitioner's reliance on *Hinton v. Alabama*, 571 U.S. 263 (2014) is "inapposite." (Objections at 7).

The Supreme Court, in *Hinton*, reiterated the standard set forth in *Strickland* that "a criminal defendant's Sixth Amendment right to counsel is violated if his trial attorney's performance falls below an objective standard of reasonableness and if there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission." 571 U.S. at 264. In *Hinton*, "[t]he State's case turned on whether its expert witnesses could convince the jury that" six bullets recovered from a crime scene, the "only physical evidence" in the case, were fired from the defendant's revolver. *Id.* at 265. A forensic comparison of bullets recovered at various crime scenes was "the only evidence linking" the defendant to two murders. *Id.* at 265-66. The Supreme Court found that trial counsel acted unreasonably in having "the mistaken belief that he could pay no more than $1,000 for an expert witness." *Id.* at 268. Defendant's trial counsel did hire an expert to testify on defendant's behalf, but this expert was wholly unqualified. *Id.* at 268-69. The "only reasonable and available defense strategy" was "consultation with experts or introduction of expert evidence." *Id.* at 273. Defendant's counsel, thus, by not knowing that he could apply for additional funds for a more qualified expert, made an "inexcusable mistake of law . . . ." *Id.* at 275. Since the first prong required to find ineffective assistance of counsel was satisfied, the Supreme Court remanded for consideration of whether the defendant was prejudiced by his attorney's deficient performance under *Strickland*. *Id.* at 276

Mr. Mazzamurro's failure to apply for additional funds to retain experts is distinguishable from *Hinton* for two reasons.

First, in *Hinton*, defense counsel was operating under the mistaken belief that he could not apply for additional funds for experts. *Id.* at 275. Here, Mr. Mazzamurro knew he could apply for additional funds for experts but chose not to do so. (440.10 Hr'g Tr. at 206:1-6). Mr. Mazzamurro's decision not to retain an expert did not rest on an "unreasonable failure to understand the resources that state law made available to him." *Hinton*, 571 U.S. at 274-75. Petitioner is correct that the trial court never told Mr. Mazzamurro that it would not approve additional funds for experts. (*See* Sept. 14, 2006 Hr'g Tr.). However, Mr. Mazzamurro's decision to not apply for additional funds for experts was a strategic choice, driven in part by the trial court's comments at the September 14, 2006 hearing, not "an inexcusable mistake of law." *Hinton,* 571 U.S. at 275.

Second, in *Hinton*, "the only evidence linking Hinton to the two murders were forensic comparisons of the bullets recovered from those crime scenes to the Hinton revolver." *Id.* at 265-66. The prosecution's case, thus, rested on the forensic analysis of those bullets by experts. *Id.* Here, there was other evidence, including the testimony of K.K., from which a jury could have found Petitioner guilty. Petitioner's case is more comparable to *Harrington*, where the Supreme Court refused to limit the "wide latitude counsel must have in making tactical decisions" to "one technique or approach." 562 U.S. at 106. Unlike in Petitioner's trial, it was not apparent in *Harrington* that expert testimony would be important prior to the start of trial. *Id.* at 107. The Supreme Court, in *Harrington*, stated: "Even if it had been apparent that expert blood testimony could support [petitioner's] defense, it would be reasonable to conclude that a competent attorney might elect not to use it." *Id.* at 108. Here, while it was apparent that expert testimony could have helped Petitioner's defense, Mr. Mazzamurro was not deficient for electing not to use it,

13

particularly given that there were other reasonable strategies to pursue. In *Hinton*, the "rare case" alluded to in *Harrington*, 562 U.S. at 106, the "only reasonable and available defense strategy" was "consultation with experts or introduction of expert evidence." *Hinton*, 265 U.S. at 273. That was not the case here.

Accordingly, the Appellate Division did not decide Petitioner's "case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Hawkins*, 460 F.3d at 242 (alteration in original) (quoting *Williams*, 529 U.S. at 412-413). The Court, thus, adopts the R&R's analysis of *Hinton* in full.

C.  Trial Counsel's Cross-Examination of Expert Witnesses

Petitioner also objects to Judge Krause's finding that Mr. Mazzamurro's cross-examination of the prosecution's experts was not deficient. (Objections at 12-16). But Judge Krause correctly found that Mr. Mazzamurro sufficiently prepared for and effectively cross-examined the prosecution's experts and, consequently, that the Appellate Division's decision in this regard was not contrary to, nor an unreasonable application of, clearly established federal law. (Report at 33-35).

Mr. Mazzamurro, to prepare for Dr. Canter's testimony, read medical literature, including regarding colposcopy examinations and how the hymen is affected by sexual abuse, and familiarized himself with medical theories that were helpful to Petitioner's case. (*See* 440.10 Hr'g Tr. at 51:17-52:2, 72:19-25, 74:5-9, 131:23-134:20, 142:7-21, 144:7-18). Mr. Mazzamurro, to prepare for Dr. Meltzer's testimony, researched and familiarized himself with CSAAS. (*See id.* at 46:7-20, 50:18-20, 74:5-8). Mr. Mazzamurro, at trial, successfully elicited from Dr. Canter that she could not conclude that the "alleged asymmetry in the border of the complainant's hymen was caused by penile penetration or was the result of one or more acts of penetration" and from Dr.

14

Meltzer that "she mostly testified on behalf of the prosecution, that child allegations of sexual abuse are unreliable when made in response to suggestive questioning, and that this most often occurs, as here, against the background of a dispute over custody and visitation." *Ross*, 119 A.D.3d at 965. Petitioner now, in hindsight, argues that Mr. Mazzamurro could have done more in his cross-examination but, as Judge Krause correctly noted, the Supreme Court has cautioned against such second-guessing. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . ."). Moreover, the Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance of success." *Knowles*, 556 U.S. at 123.

Accordingly, the Appellate Division and Judge Krause correctly found that Mr. Mazzamurro's preparation for and cross-examination of the prosecution's experts was not deficient under the first prong of the *Strickland* analysis.

D. Trial Counsel's Failure to Call the Victim's Pediatrician and Cross-Examine Petitioner's Ex-Wife

Petitioner also objects to Judge Krause's findings that trial counsel's failure: (1) to call K.K.'s pediatrician as a witness; and (2) to cross-examine Petitioner's ex-wife, B.K., or present evidence of their family court history, was not ineffective assistance of counsel. (Objections at 17-18). The Court agrees with Judge Krause that these were tactical decisions by Mr. Mazzamurro and, thus, do not rise to the level of constitutional infirmity. (Report at 37-41).

With respect to K.K.'s pediatrician, Mr. Mazzamurro spoke with him and ultimately determined that he would not be a helpful witness. (440.10 Hr'g Tr. at 67:6-10, 68:11-23). Mr. Mazzamurro testified at Petitioner's Section 440.10 hearing that the pediatrician represented that he was "not the type of doctor that could handle this type of matter." (*Id.* at 67:6-10). Mr. Mazzamurro further testified that the pediatrician "didn't have much of an interaction with the

15

child, and in his, you know, speaking to the child, he really didn't notice anything." (*Id.* at 68:11-23). As Judge Krause correctly found, the decision not to call K.K.'s pediatrician as a witness "falls squarely within the ambit of trial strategy . . . ." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). The Appellate Division correctly looked at Mr. Mazzamurro's performance as a whole in finding that it was not deficient. *See Ross*, 119 A.D.3d at 965 ("[V]iewing trial counsel's performance in totality, he provided meaningful representation."); *see also Harrington*, 562 U.S. at 111 ("[I]t is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy.").

Additionally, Mr. Mazzamurro's decision not to cross-examine Petitioner's ex-wife, B.K., about their family court history or introduce evidence of such history does not constitute ineffective assistance of counsel. Given that the family court petition filed against Petitioner was sustained, and Petitioner was found in the family court to have abused K.K. (*see* Resp. Aff. at 6-7), it was not unreasonable for Mr. Mazzamurro to avoid Petitioner and B.K.'s family court history. Indeed, "[a]n attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense." *Harrington*, 562 U.S. at 108 (citing *Strickland*, 466 U.S. at 691).

Accordingly, Judge Krause correctly found that Appellate Division's determination that these strategies did not constitute ineffective assistance of counsel was not contrary to, nor an unreasonable application of, clearly established federal law. (Report at 40-41).

III.    Certificate of Appealability

Finally, Petitioner objects to the Report because it "does not include a recommendation on whether or not a certificate of appealability should issue in the event the Petition is denied." (Objections at 18). Petitioner, however, did not request a certificate of appealability prior to the filing of his Objections. (*See* Petition; Doc. 3; Doc. 15). Despite Petitioner's failure to make such

a request, the Court *sua sponte* considers whether a certificate of appealability shall issue. *See Diallo v. United States*, No. 12-CV-03310, 2014 U.S. Dist. LEXIS 129391, at *1 (S.D.N.Y. Sept. 10, 2014) ("Although [petitioner] did not request a Certificate of Appealability ('COA') in his petition, we *sua sponte* consider it.").

A certificate of appealability may issue if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Here, for the reasons discussed above and in the Report, Petitioner has failed to make this showing. Accordingly, no certificate of appealability shall issue.

## CONCLUSION

Petitioner's Objections to the Report are overruled, and the Court adopts the Report in its entirety, except modifies it only to the extent to state that no certificate of appealability shall issue.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

Dated:    White Plains, New York
          March 31, 2026

_____
PHILIP M. HALPERN
United States District Judge

17